530 A.2d 83

COMMONWEALTH of Pennsylvania, Appellee,

v.

James R. BRYANT, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 28, 1987.

Decided Aug. 25, 1987.

(1980). I find the reasons for this different standard to be equally unpersuasive in these opinions.

474

John S. Manos, Philadelphia, for appellant.

Ronald Eisenberg, Chief, Appeals Div., Gaele McLaughlin Barthold, Deputy Dist. Atty., Marion MacIntyre, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On April 19, 1984, in a trial by jury in the Philadelphia Court of Common Pleas, the appellant, James R. Bryant, was found guilty of burglary, robbery, and murder of the first degree. A suspended sentence was imposed with respect to burglary, and a ten to twenty year term of imprisonment was imposed for robbery. In connection with the murder conviction, a separate sentencing hearing was held, as required by 42 Pa.C.S.A. § 9711, and appellant was sentenced to death. The instant direct appeal ensued.

The incident from which the convictions arose was one in which an elderly woman was beaten and robbed in her home. Specifically, on December 1, 1978, at a time nearing midnight, the home of a seventy-four year old woman in the Germantown section of the City of Philadelphia was burglarized. In the course of the burglary, the woman, Edith Steckle, was brutally beaten and robbed. Steckle died

approximately two weeks later as a result of the injuries sustained. The injuries included a badly beaten face, broken ribs, a broken leg, etc. The perpetrator of the crime also ransacked Steckle's house, and stole a number of items including a television set, a radio, and a ring.

There was no direct evidence as to the identity of the guilty party, for Steckle never regained consciousness after the beating, and there were no other eyewitnesses to the crime. One of Steckle's neighbors did observe an individual, believed to be male, walking along an adjoining street shortly after the crime occurred, and the individual appeared to be carrying a television set on his shoulder. The neighbor testified at trial, however, that it had not been possible to observe many identifying details of the individual's appearance. The neighbor was only able to testify that the individual was wearing a dark jacket, and that the individual was between 5'5" and 5'8" in height, but details such as race and other physical characteristics had not been observed. There were no useful fingerprints recovered from the crime scene, and the case against appellant rested primarily upon the circumstantial inference to be drawn from the fact that, approximately four weeks after the crime, a search of appellant's residence was conducted and the stolen television, radio, and ring were recovered.

At trial, evidence was introduced that appellant had committed a prior crime, and the details of that prior crime were fully set forth through the testimony of a number of witnesses. It is now argued that admission of such evidence constituted prejudicial error warranting a new trial. We agree. The prior crime consisted of a burglary and assault that occurred slightly more than two months before the instant one, at a location approximately four blocks away. The victim was an eighty-four year old woman, who, in the course of a burglary of her home, was severely beaten about the face, but who later recovered from her injuries. The beating was inflicted with fists, and with a ceramic door stop that the victim had kept in her home. The perpetrator, wearing a dark jacket, had entered the

victim's house through a window, within an hour after midnight, and proceeded to ransack the premises. He defecated on the floor of the dining room, and left additional traces of excrement on the floor in an upstairs bedroom. Police had been alerted that a burglary was in progress, and, upon arriving at the scene, confronted the perpetrator as he left the premises through the front door. He ran from the scene and escaped, but police later positively identified him as appellant. Appellant's palm print was also discovered in the victim's house. Based upon this evidence, appellant was convicted.

█ In the instant trial, evidence regarding this prior criminal conduct was ruled admissible by the trial court on grounds it was probative of appellant's guilt with respect to the crimes charged. Under the facts presented, however, we believe the trial court's ruling was clearly erroneous. As stated in *Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981),

> It is a principle of long standing in this Commonwealth that evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind. *Commonwealth v. Fortune*, 464 Pa. 367, 373, 346 A.2d 783, 786 (197[5]); *Commonwealth v. Wable*, 382 Pa. 80, 84, 114 A.2d 334, 336 (1955).

Indeed, evidence of prior criminal activity on the part of the accused is so highly prejudicial in its effect upon the jury as to be equalled only by an actual confession in its impact upon the deliberative process. See *Commonwealth v. Spruill*, 480 Pa. 601, 606, 391 A.2d 1048, 1050 (1978). Recognition of this fact, and the belief that an individual's past propensity to commit crime should not condemn him to repeated subsequent convictions merely because he has a "bad" character, have been the basis for excluding such evidence. See *Commonwealth v. Jones*, 499 Pa. 522, 527–

528, 454 A.2d 8, 11 (1982). In McCormick, *Evidence,* § 190 (1972 2d ed.), the policy of excluding such evidence was well summarized:

> The disfavor for receiving proof of the character of a person as evidence that on a particular occasion he acted in keeping with his disposition is strongly felt when the state seeks to show that the accused is a bad man and thus more likely to have committed the crime.... [I]n the setting of jury trial the danger of prejudice outweighs the probative value.
>
> This danger is at its highest when character is shown by other criminal acts.... [T]he prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character. There are numerous other purposes for which evidence of other criminal acts may be offered, and when so offered the rule of exclusion is simply inapplicable.

(Footnotes omitted).

It is well settled that one of the "special circumstances" referred to in *Commonwealth v. Morris,* supra, supplying a proper purpose for admission of evidence of prior crimes, and thus rendering the rule of exclusion inapplicable, consists of the situation where the prior crime was committed in a manner bearing such distinct similarities to the manner in which the present crime was committed that one would naturally conclude that both crimes were perpetrated by the same individual. As stated in *Commonwealth v. Wable,* 382 Pa. 80, 84, 114 A.2d 334, 336 (1955),

> [E]vidence of other crimes *is* admissible when it tends to prove a *common scheme,* plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is *such a logical connection* between the crimes

that proof of one will naturally tend to show that the accused is the person who committed the other.

(Emphasis added). See also, *Commonwealth v. Fortune,* 464 Pa. 367, 373, 346 A.2d 783, 786 (1975); *Commonwealth v. Morris,* 493 Pa. at 175, 425 A.2d at 720. Indeed, this Court has often cited McCormick, *Evidence,* § 190 (1972 2d ed.), wherein evidence of other crimes is said to be admissible:

To prove other like crimes by the accused *so nearly identical in method* as to earmark them as the handiwork of the accused. Here *much more is demanded than the mere repeated commission of crimes of the same class,* such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a *signature.*

(Emphasis added) (Footnotes omitted). See *Commonwealth v. Morris,* 493 Pa. at 176, 425 A.2d at 720–721 ("[T]here must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others."); *Commonwealth v. Shively,* 492 Pa. 411, 415, 424 A.2d 1257, 1259 (1981).

In the instant case, an examination of the record fails to reveal sufficient similarities between the two criminal episodes to permit admission of evidence of the earlier one to be sustained under the foregoing standards. In short, there is not evidence of a "common scheme" or "such a logical connection between the two crimes" that one would naturally conclude that the same individual was responsible for both crimes. See *Commonwealth v. Wable,* supra. Nor can it be said that the methods employed were "so nearly identical," or so "unusual and distinctive as to be like a signature."

■ Granted, both of the crimes in question involved burglaries and physical assaults, but more is required than the mere repeated commission of the same general class of crime. See *Commonwealth v. Morris,* 493 Pa. at 176, 425 A.2d at 721; McCormick, *Evidence,* supra. There may be

some similarities to be perceived between the crimes, but those similarities are confined to relatively insignificant details that would likely be common elements regardless of who had committed the crimes. For example, both crimes occurred in the middle of the night, and both were perpetrated by individuals wearing dark jackets. It is, however, common for burglaries to occur at night, and it is certainly not unusual for persons to be seen wearing dark jackets. Similarly, both of the burglaries in question involved the ransacking of houses. Yet, in connection with domestic burglaries, it is most common that burglars are looking for goods to steal. A television, a radio, and a ring were stolen from the home of the present victim, but the record is silent as to what items, if any, were stolen in the course of the earlier crime. Nor can much significance be ascribed to the fact that the victims of both crimes were senior citizens living in the Germantown section of the City of Philadelphia. Senior citizens are frequently the victims of violent crimes, and this is particularly so in major urban areas such as the City of Philadelphia.

A number of differences between the two crimes could also be noted, such as the fact that the perpetrator of the earlier crime defecated on the floor in the victim's house whereas nothing comparable occurred in connection with the instant crime, but, inasmuch as features which the two crimes had in common were lacking, it is not necessary to further address such differences. It is clear that the circumstances surrounding the two crimes were not sufficiently similar as to render admissible the evidence of appellant's role in the crime for which he was not presently being tried. Appellant is entitled, therefore, to a new trial.

Judgment of sentence reversed, and a new trial granted.

HUTCHINSON, J., joins the majority opinion and files a concurring opinion.

NIX, C.J., and LARSEN and McDERMOTT, JJ., filed dissenting opinions.

HUTCHINSON, Justice, concurring.

I join the majority opinion, but write in response to Mr. Justice Larsen's and Mr. Justice McDermott's dissenting opinions. The majority correctly holds that the similarities between the two crimes in this case are not sufficient to admit evidence of the earlier crime for the purpose of showing appellant's identity as the perpetrator of this homicide. In admitting evidence of a prior crime because it is so near in method to the crime charged as to show that both were committed by the accused, there must be unique common characteristics between the two crimes. As Dean McCormick has stated, "The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.... In addition, the courts tend to apply stricter standards when the desired inference pertains to identity as opposed to state of mind." McCORMICK ON EVIDENCE § 190 at 560–563 (E. Cleary, 3d ed. 1984). As the majority points out, there is nothing uniquely similar about these two crimes. None of the similarities are so "unusual and distinctive as to be like a signature." I further agree with the majority that where there are insufficient similarities to analogize the commission of the two crimes to appellant's "signature," there is no need to examine the dissimilarities between the two crimes. In exercising his discretion on whether to admit evidence of prior crimes under a *modus operandi* standard, a trial judge should not consider *dissimilarities* between the crimes, or lack thereof, until he is satisfied there are sufficient *unique* similarities.

Mr. Justice Larsen and Mr. Justice McDermott place significance on the fact that appellant could be *independently* linked to both crimes. However, appellant's possession of a ring, television, and radio stolen from Ms. Steckle's home furnishes no *common factor* to tie him to the burglary and assault of Ms. Sawyer. While this independent evidence would be relevant in showing sufficient evidence to find guilt beyond a reasonable doubt, the sufficiency of the evidence is not an issue presently before us.

NIX, Chief Justice, dissenting.

Notwithstanding the majority's valiant effort to explain away the similarities between the two crimes, I am not persuaded that the trial court's ruling in admitting the testimony was incorrect. Both burglaries were committed within a four-block area, occurring within a period of two and one-half months, at approximately the same time, both victims being elderly females living alone, and in each instance the victim was severely beaten and the assailant wore dark clothing. In each instance the object of the crimes was to take items of value found on the premises.

I therefore dissent.

LARSEN, Justice, dissenting.

I dissent, and I join Mr. Justice McDermott's dissenting opinion. Additionally, I set forth the following analysis in support of the trial court's determination that evidence of a distinct similar crime was admissible evidence that could legitimately be used against appellant in the instant case.

The majority takes a far too narrow view of the "special circumstances" which justify the introduction in a criminal prosecution of a defendant's other crimes. As the majority states, it is certainly true as a general proposition:

> that evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind.

*Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981).

However, as the majority notes, this general rule is indeed subject to numerous exceptions. As we recently stated in *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987):

> [T]he general rule prohibiting the admission of evidence of prior crimes nevertheless

allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) *to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.*

*Commonwealth v. Morris, supra* at 493 Pa. 175, 425 A.2d 715. This list of "special circumstances" is not exclusive, and this Court has demonstrated *it will recognize additional exceptions to the general rule where the probative value of the evidence outweighs the tendency to prejudice the jury. Commonwealth v. Claypool,* [508 Pa. 198, 204, 495 A.2d 176 (1985)] (evidence of defendant's prior criminal activity is admissible where defendant makes statement about such activity in order to threaten and intimidate victim and where force or threat of force is element of crime for which defendant is being prosecuted). *Such evidentiary issues are addressed to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Id.* With these principles to guide us, we review appellant's specific assignments of error.

513 Pa. 318, 521 A.2d at 17 (emphasis added).

As Dean McCormick stated:

[T]he prosecution may not introduce evidence of other criminal acts of the accused *unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character. There are numerous other purposes for which evidence of other criminal acts may be offered,* and when so offered the rule of exclusion is simply inapplicable.

McCormick, *Evidence*, § 190 (1972 2d ed.) (emphasis added), quoted in majority opinion, *supra* at 477.

It is clear from the foregoing that the "prejudice" of which Dean McCormick speaks, and which the *general* rule prohibiting evidence of distinct crimes seeks to prevent, is not simply prejudice in the sense that he will be linked to the crime for which he is being prosecuted, for that sort of "prejudice" is ostensibly the purpose of *all* prosecution evidence. Rather, this "prejudice" is the prejudice that would adhere if the evidence tended to convict the defendant of this crime *only* because he exhibited a propensity to commit this same type of crime at some other time or times or because he was a person of bad character. *Commonwealth v. Banks, supra*, 513 Pa. at 350–351, 521 A.2d at 17.

Viewed in light of the foregoing principles, I would hold that the trial court did not abuse its discretion in permitting the Commonwealth to introduce evidence of appellant's brutal assault upon Bessie Sawyer on September 23, 1978 for which he was convicted. As Mr. Justice McDermott observes, the similarities between the assault on Bessie Sawyer and the assault on Edith Steckle on December 1, 1978 were quite remarkable. Both victims were elderly women who lived within blocks of each other, and of appellant, in the Germantown area of Philadelphia. Both defenseless women were viciously and senselessly attacked, a bit more than two months apart, at night in their homes, which were thoroughly ransacked. Appellant, a short black man, was positively identified as the attacker of Bessie Sawyer by eyewitnesses who saw appellant leave the scene wearing a dark leather jacket. A neighbor observed a short person leave Ms. Steckle's home on the night of her brutalization carrying a television set and wearing a black leather jacket. The neighbor testified that he believed the person to be a black male.[1] The manner of the attacks was also

---

1. The majority states of this neighbor's testimony that "details such as race and other physical characteristics had not been observed." At 475. This is misleading. While his observation was not stated with total certainty or conviction, the neighbor, Mr. Cleveland Brunson, did testify that it was his belief that the person he saw leaving Ms.

quite similar, each victim having been repeatedly and merci-
lessly beaten about the face and body, and left bloody and
battered.

The evidence of these two crimes, so close in time and
geographic proximity, and so similar in the gratuitous bru-
tality accompanying a burglary and ransacking of homes,
showed such a logical connection between them as to natu-
rally show that the person who committed the one also
committed the other. Contrary to the majority's assertion,
the vicious and gratuitous beatings of defenseless elderly
victims are not "common elements" of most burglaries.

*Additionally and importantly*, there was further evi-
dence that established an affirmative link between the
"perpetrators" of these two crimes, namely appellant's posi-
tive identification and palm print at the scene of Ms. Saw-
yer's assault and the fact that appellant was in possession
of several items (a radio, television set, and a 1919 high
school ring) stolen from Ms. Steckle's home, and the similar
descriptions of the perpetrators. Thus, the significance of
the evidence of the prior crime was *not only* that the
perpetrator left his "signature" on both crimes (and on both
victims), but also that one person—appellant—was positive-
ly linked to *both crimes* by extraneous evidence. The
evidence of appellant's assault and burglary of Ms. Sawyer
was *extremely probative* of his guilt of the Steckle assault
and burglary. Such evidence raised to a near certainty the
probability that appellant attacked Ms. Steckle and stole her
property, and discredited his feeble attempts to demon-
strate that he had just coincidentally happened to purchase
Ms. Steckle's stolen television set and radio from a partici-
pant in a crap game in a Philadelphia school yard. (Appel-
lant produced a witness to this "purchase," a man who had
been in Graterford prison with appellant and whose testimo-
ny was discredited on cross-examination).

There is presumably a large class of short black males in
the Germantown area. There is only a limited potential

Steckle's house with a television set was a black male. Notes of
Testimony, April 12, 1984 at 1.39.

class of such persons who possessed property stolen from Ms. Steckle on the night she was savagely beaten and killed, and the class of short black males from the Germantown area who possessed Ms. Steckle's stolen property *and* who had recently perpetrated a strikingly similar crime a few blocks away narrows the potential class to an exceedingly small class of one, namely appellant. *See Commonwealth v. Holcomb*, 508 Pa. 425, 448–455, 498 A.2d 833, 844–47 (1985) (Opinion of Mr. Justice Hutchinson announcing the judgment of the Court) (discussion of circumstantial evidence and inferences therefrom as narrowing the classes of potential perpetrators).

The majority gives short shrift to these affirmative links between appellant and the *two crimes*, and thus down plays the highly probative value of the evidence of the prior assault on Ms. Sawyer. The majority also appears to be influenced by perceived *dissimilarities* between the crimes, dissimilarities which I find insignificant. Obviously, the major dissimilarity was that appellant had defecated at the first crime and he did not at the second. Had he defecated at both places, his "signature" would have been more exaggerated, but his failure to do so at the second crime scene may simply indicate that he had nothing at that time to defecate.

For the foregoing reasons, I would affirm the trial court's ruling that the evidence of appellant's prior crimes against Ms. Sawyer was highly probative and outweighed the possibility of *undue* prejudice against him, and could be introduced against him in the instant prosecution.

McDERMOTT, Justice, dissenting.

I dissent. The two incidents here were as nearly similar as human events will allow. Both victims were elderly, relatively defenseless women who were preyed upon in the night. Both were mercilessly beaten. In both instances the assailant broke into their houses under cover of darkness. Both crimes occurred within a two month period within four blocks of each other.

486

In addition, appellant had links to both places, having left his palm print in one location, and being in possession of articles taken from the second location.

Rather than having erred in introducing this evidence I believe the prosecution would have been remiss if they had not tried to exploit its relevance.