611 A.2d 703

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James R. BRYANT, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 1991.

Decided June 17, 1992.

Reargument Denied Sept. 23, 1992.

*Weiskerger* adopted the federal law's language of "others who would normally avoid crime." 520 Pa. at 311, 554 A.2d at 13.

148

John S. Manos, Philadelphia, for appellant.

Ronald Eisenberg, Chief, Appeals Div., Gaele McLaughlin Barthold, Deputy Dist. Atty., Hugh Burns, Asst. Dist. Atty. and Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This appeal is before us a second time. In the first appeal, *Commonwealth v. Bryant*, 515 Pa. 473, 530 A.2d 83 (1987),

(*Bryant I* ), we vacated the death sentence and remanded the matter for a new trial. We did so because the trial court erred in admitting evidence of a prior crime. In essence, we held that the alleged "signature crime" only provided "relatively insignificant details" as compared to the crime at issue. We therefore vacated the death sentence and remanded the matter for a new trial.

At the second trial, over objections by defense counsel, the Commonwealth introduced into evidence the details of a different prior crime for which the Appellant was convicted. Again, the Appellant argues that the trial court erred in permitting this evidence.[1] We agree and again must vacate the judgment of sentence.

In the Appellant's first appeal, we succinctly set forth the relevant facts:

The incident from which the convictions arose was one in which an elderly woman was beaten and robbed in her home. Specifically, on December 1, 1978, at a time nearing midnight, the home of a seventy-four year old woman in the Germantown section of the City of Philadelphia was burglarized. In the course of the burglary, the woman, Edith Steckle, was brutally beaten and robbed. Steckle died approximately two weeks later as a result of the injuries sustained. The injuries included a badly beaten face, broken ribs, a broken leg, etc. The perpetrator of the crime also ransacked Steckle's house, and stole a number of items including a television set, a radio, and a ring.

There was no direct evidence as to the identity of the guilty party, for Steckle never regained consciousness after the beating, and there were no other eyewitnesses to the crime. One of Steckle's neighbors did observe an individual, believed to be male, walking along an adjoining street shortly after the crime occurred, and the individual ap-

---

1. At the second trial, the trial court erroneously believed that this Court was equally divided with respect to *Bryant I*. In fact, Justice Flaherty authored the Majority Opinion joined by Justice Zappala and Justice Papadakos. Justice Hutchison filed a Concurring Opinion in which he joined the Majority Opinion. Chief Justice Nix, Justice Larsen and Justice McDermott all filed Dissenting Opinions.

peared to be carrying a television set on his shoulder. The neighbor testified at trial, however, that it had not been possible to observe many identifying details of the individual's appearance. The neighbor was only able to testify that the individual was wearing a dark jacket, and that the individual was between 5′5″ and 5′8″ in height, but details such as race and other physical characteristics had not been observed. There were no useful fingerprints recovered from the crime scene, and the case against appellant rested primarily upon the circumstantial inference to be drawn from the fact that, approximately four weeks after the crime, a search of appellant's residence was conducted and the stolen television, radio, and ring were recovered.

515 Pa. at 474–475, 530 A.2d at 84.

Because direct evidence of the identification of Mrs. Steckle's perpetrator was nonexistent, the Commonwealth attempted to circumstantially establish the Appellant's identification through the testimony of a subsequent victim, Valerie Phillips.

Ms. Phillips was a 23–year old black woman who lived with her three-year-old son on the same street as the Appellant. Shortly after 11:30 P.M. on Friday, December 8, 1988, the Appellant entered Ms. Phillips premises by shattering the front door glass pane. Upon entry, Appellant wandered up to the second floor of Ms. Phillips' home only to run back to the first floor after Ms. Phillips appeared from her bedroom. A few minutes later, Ms. Phillips went downstairs to the first floor and observed the Appellant on the porch. When she went to shut the front door, the Appellant reentered the house and began to beat Ms. Phillips on the head with his fists. While dazed, Ms. Phillips was dragged by the Appellant to her second-floor bedroom. She was then told to lay on her stomach, after which the Appellant fondled her vagina. Ms. Phillips then screamed and claimed that she might deliver her baby since she was eight months pregnant. Apparently, this action caused the Appellant to curtail his assault. Appellant then took thirty dollars in cash and left the premises. The Commonwealth offered this testimony to persuade the jury

that the man that attacked Ms. Phillips was the same man who killed Mrs. Steckle.

█ In *Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981), we stated:

It is a principle of longstanding in this Commonwealth that evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind. (citations omitted)

In *Bryant I*, we addressed the "special circumstances" referred to in *Morris*. Admission of prior criminal conduct is proper "where the prior crime was committed in a manner bearing such distinct similarities to the manner in which the present crime was committed that one would naturally conclude that both crimes were perpetrated by the same individual." *Commonwealth v. Bryant*, 515 Pa. at 477, 530 A.2d at 85. To satisfy this requirement, the Commonwealth must demonstrate the existence of a common scheme or logical connection between the two crimes so that one would naturally conclude that the same individual was responsible for both crimes. However, similarity must consist of more than repetition of the same general class of crimes.

In *Bryant I*, we concluded that the factual scenario of the two crimes did not present sufficient significant similarities as to constitute a common scheme. Both crimes involved burglaries and physical assaults of elderly women in the middle of the night by an individual wearing a dark jacket. However, the perpetrator of the earlier crime defecated on the floor in the victim's house whereas nothing comparable occurred in Mrs. Steckle's home.

Since *Bryant I*, we considered the same issue in *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989). In *Hughes*, the defendant was accused of raping and murdering Rochelle Graham on March 1, 1979. During the trial, the Commonwealth offered into evidence the testimony of Marie

Oquendo. Ms. Oquendo testified that the defendant raped her on January 5, 1980. The purpose of this evidence was to establish the defendant's identity as well as establish a common scheme, plan or design for the rape and murder of Rochelle Graham.

The evidence established the following similarities in both crimes:

(1) Both crimes involved young females (Graham was nine; Oquendo was twelve); (2) both victims were non-Caucasian (Graham was Negro; Oquendo was Puerto Rican); (3) both crimes occurred during the daytime; (4) both crimes took place within a four-block radius; (5) both crimes took place within a five-minute walk from Appellant's home; (6) both crimes involved circumstances in which the victim was lured or strong-armed off the street; (7) both victims were taken to upstairs bedrooms of vacant buildings; (8) in both crimes the assailant ordered the victims to undress; (9) both crimes involved rape, other sex acts (Graham was anally; Oquendo was orally), and manual strangulation; and (10) both crimes involved circumstances in which the accused and the victims were previously acquainted.

521 Pa. at 459, 555 A.2d at 1282.

In addition to the forgoing similarities, there was further evidence which clearly established a link between the perpetrator of the Graham murder and the Oquendo assault. At the Graham crime scene, the letters "PEA" were burned into the ceiling. When the police arrested the defendant for the Graham killing, they noticed the letters "PEANUT" burned into defendant's bedroom ceiling. Finally, Ms. Oquendo knew the defendant as "Peanut" in the community.

Based upon these facts, we concluded that the trial court did not err in permitting Ms. Oquendo's testimony given that the similarities were not confined to insignificant details that would likely be common elements regardless of who committed the crimes. Instead, the crime scenario represented the defendant's signature.

■ In the matter now before us, we cannot conclude that the factual predicates are so distinctly similar that one could naturally conclude that both crimes were perpetrated by the same individual. Although there exists general similarities, the elements of common scheme or design are lacking. It is true that both crimes occurred at approximately the same time of night and within a one and one-half block of the Appellant's home. However, the victims' ages varied drastically, in addition to the victims being of different races. Furthermore, the evidence was questionable as to whether Mrs. Steckle was sexually assaulted although Ms. Phillips was assaulted.[2] It was also widely known that Mrs. Steckle lived alone while Ms. Phillips lived with her three-year-old son. Furthermore, while Mrs. Steckle was brutally and viciously injured in the face, head, body, arms and legs, Ms. Phillips was punched only in the head. Mrs. Steckle was found lying on the ground floor, while Mrs. Phillips was dragged to the second-floor bedroom. Finally, a television, radio, and ring were taken from Mrs. Steckle's home, while only thirty dollars in cash was taken from Ms. Phillips even though a portable television and radio were in full sight of the burglar.

While it is true that every element of the crimes need not be identical to constitute a "signature crime", the details relied upon must be sufficiently unique to suggest that the crimes were committed by the same person. Based upon the similarities and differences between these two crimes and the lack of any uniqueness, we would be hard pressed to conclude that the same individual committed both crimes.

Accordingly, the judgment of sentence is reversed and this matter is remanded for a new trial.

LARSEN and McDERMOTT, JJ., dissent.

2. At trial, no objective evidence of sexual assault was presented. Rather, the Commonwealth relied upon a theory of sexual assault based upon a hypothetical question. Furthermore, the key to this hypothetical was the presence of blood in the vagina. The medical examiner was equivocal regarding this alleged evidence of sexual assault to the extent that he could not state with a degree of medical certainty whether this blood was caused by a sexual assault or was the result of the beating sustained by Mrs. Steckle.