J-S20017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEROY ABNER, JR. | |
| Appellant | No. 1932 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 14, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000136-2017

BEFORE: SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.: Filed: April 8, 2021

Appellant, LeRoy Abner, Jr., appeals from the May 14, 2018 judgment of sentence imposing 11½ to 23 months of incarceration followed by three years of probation for aggravated indecent assault and indecent assault. We affirm.

The conviction arose from the June 21, 2016 assault of K.H. On that evening, K.H. traveled from her home in New Jersey to visit her friend, Lauren McCall, in Philadelphia. They spent the evening at a bar called "The Saint," drinking alcohol and using cocaine with McCall's boyfriend, Dan Fisher, Appellant, and others. At 2:30 the following morning, the group traveled to an apartment that Appellant and Fisher shared. K.H. eventually fell asleep on a couch while on the phone with her boyfriend. K.H. testified that she woke up to find Appellant penetrating her vagina with his fingers. She said, "Get

the fuck away from me," and she told McCall about the incident later that morning. Two months later, K.H. reported the assault to police.

The K.H. case was consolidated for trial with a case involving alleged victim C.R. The Commonwealth's evidence reflected that, on the evening of November 4, 2012 and the morning of November 5, 2012, C.R., her husband, J.R., and Appellant were together at a bar called the Barbary and then at a house party in South Philadelphia. C.R. and J.R. invited Appellant to share a cab, as they lived near each other, and then invited him into their apartment. C.R. fell asleep naked in the couple's bedroom while Appellant and J.R. continued drinking in the living room. C.R. testified that she woke up feeling fingers in her vagina and, assuming it was her husband, let it go on. She then heard J.R. call to her from another room and screamed. Appellant ran out of the room, and J.R. eventually asked him to leave the apartment. The jury found Appellant not guilty on all counts arising from his alleged assault of C.R.

Following the jury's conviction in the K.H. case, and the trial court's sentencing, Appellant filed this timely appeal. He presents four questions:

> 1. Whether the trial court erred by granting the Commonwealth's motion to consolidate two separate allegations of criminal conduct thus depriving Appellant of a fair trial and due process rights under the Pennsylvania and United States Constitutions.
>
> 2. Whether the trial court erred and deprived Appellant of his constitutional right to testify, to present a defense, and to confront witnesses against him when it precluded Appellant from providing testimony that it deemed hearsay; and, whether the trial court abused its discretion when it concluded Appellant's testimony constituted hearsay.

3. Whether the trial court erred and deprived Appellant of due process when it permitted the Commonwealth to elicit testimony that was based wholly on speculation and/or improper opinion testimony.

4. Whether Appellant was denied his right to due process because the prosecutor engaged in prosecutorial misconduct during argument; and, whether the trial court erred in failing to sustain Appellant's objection to that misconduct.

Appellant's Brief, at 5.

Rule 582 of the Pennsylvania Rules of Criminal Procedure governs consolidation, which provides, insofar as is pertinent here, that the Commonwealth may try separately charged offenses together if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(A)(1)(a).[1] Evidence of a separate criminal act is not admissible to establish a defendant's propensity for criminal behavior, but it may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (citing Pa.R.E. 404(b)(2), *cert. denied*, 559 U.S. 1111 (2010). The Commonwealth sought consolidation based on Appellant's common scheme or plan. Consolidation on this basis is appropriate where there are "shared similarities in the details of

---

[1] We decline the Commonwealth's invitation to find this issue waived based on Appellant's vague assertion of it in his Pa.R.A.P. 1925(b) statement. The trial court correctly perceived the nature of Appellant's argument and prepared an opinion on it, thus adequately facilitating our review.

each crime." ***Commonwealth v. Keaton***, 729 A.2d 529, 537 (Pa. 1999), ***cert. denied***, 528 U.S. 1163 (2000). Further, the probative value of the evidence must outweigh the potential for unfair prejudice. ***Commonwealth v. Tyson***, 119 A.2d 353, 360 (Pa. Super 2015) (*en banc*), ***appeal denied***, 128 A.3d 220 (Pa. 2015). An appropriate cautionary instruction may ameliorate the prejudicial effect, and jurors are presumed to follow instructions from the trial court. ***Id.*** The decision to consolidate rests within the discretion of the trial court and we will reverse only for an abuse of discretion or prejudice and clear injustice to the defendant. ***Id.***

In ***Tyson***, this Court held that evidence of a prior rape was admissible against the defendant where, in both cases, the victims were the same race and roughly the same age, were acquainted with the defendant and the defendant was present in the victim's home by invitation, the defendant was aware the victims were in a compromised state (one was drunk and the other had donated plasma shortly before the assault), and the victims were unconscious when the assault began and then awoke to find the defendant having vaginal intercourse with them. ***Id.*** That is, the two cases involved actions that were not "generically common to many sexual assault cases." ***Id.***

Similarly, in the instant matter, Appellant was acquainted with both women, having been out drinking in a bar with them in the evening and early

morning hours preceding the assault.[2]  Both victims fell asleep alone in a private residence—C.R. in her home and K.H. on the couch in Appellant's apartment, and both claimed they woke up to find Appellant penetrating their vagina with his fingers.  Appellant notes, however, that the assaults took place in different homes, that different numbers of people were present within the home at the time of the attack, that C.R. was not intoxicated at the time of the assault, and that the victims gave differing accounts of his behavior following the assaults—K.H. said he ran away at first but then came back and offered her a glass of water, whereas C.R. claimed Appellant ran out of the house, leaving behind his jacket, after she woke up and confronted him.

Ultimately, the law does not require the circumstances to be identical. The Commonwealth must establish similarities that are not generically common among sexual offenses, as per *Tyson*, and we conclude the Commonwealth has done so.  In both cases, the Commonwealth's evidence was that Appellant and the victim were among a group at a bar drinking and socializing until the bar closed, and then carried on the revelry at a private residence.  The C.R. case involved a house party after the bars closed, whereas in the K.H. case, the group involved continued drinking at Appellant's apartment in the early morning hours after the bars closed.  Appellant was

---

[2]  C.R. testified that she only had two beers.  N.T. Trial, 3/08/18, at 51.  K.H. consumed alcohol throughout the evening and early morning and used some cocaine.  *Id.* at 132-133.

with both victims when he knew they would fall asleep, and he commenced the assault when the victims fell asleep in a room with no one else present. Both victims alleged digital penetration while they were asleep. These cases involved many facts that are not generically common to all sexual assaults.

Given the similarities of the offenses, we do not consider the four-year time lapse between the alleged assaults to be dispositive. The importance of the time lapse is "inversely proportional to the similarity of the crimes in question." **Tyson**, 119 A.3d at 360; **see also Commonwealth v. Lukitsch**, 680 A.2d 877, 878-79 (Pa. Super. 1996) (holding that a six-year time lapse between similar crimes was not dispositive of whether they could be considered part of a common scheme or plan).

The case law Appellant relies on in his brief does not support reversal here. He cites **Commonwealth v. Bryant**, 530 A.2d 83 (Pa. 1987), in which our Supreme Court held that the trial court erred in admitting evidence of a prior robbery for which the defendant had been convicted. In the prior robbery, the defendant beat the victim's face and ransacked the apartment. **Id.** at 84. Police observed Appellant at the scene, and eventually apprehended him and identified him. **Id.** at 84-85. In the subsequent case, for which the defendant also stood trial, the victim suffered a badly beaten face, broken ribs, and a broken leg. She eventually died from her wounds. **Id.** at 84. There was no direct evidence of the perpetrator's identity. **Id.** Thus, both victims were elderly and were beaten in the face; the robberies

took place in the middle of the night in locations approximately four blocks from one another. *Id.*

The *Bryant* Court wrote:

Granted, both of the crimes in question involved burglaries and physical assaults, but more is required than the mere repeated commission of the same general class of crime. There may be some similarities to be perceived between the crimes, but those similarities are confined to relatively insignificant details that would likely be common elements regardless of who had committed the crimes. For example, both crimes occurred in the middle of the night, and both were perpetrated by individuals wearing dark jackets. It is, however, common for burglaries to occur at night, and it is certainly not unusual for persons to be seen wearing dark jackets. Similarly, both of the burglaries in question involved the ransacking of houses. Yet, in connection with domestic burglaries, it is most common that burglars are looking for goods to steal. A television, a radio, and a ring were stolen from the home of the present victim, but the record is silent as to what items, if any, were stolen in the course of the earlier crime. Nor can much significance be ascribed to the fact that the victims of both crimes were senior citizens living in the Germantown section of the City of Philadelphia. Senior citizens are frequently the victims of violent crimes, and this is particularly so in major urban areas such as the City of Philadelphia.

*Id.* at 86. Thus, there was no strong logical connection between the two crimes, such that one would naturally conclude that the same individual committed both. *Id.* Furthermore, the perpetrator's methods were not so unusual and distinctive as to be a signature. *Id.*

The instant case is distinguishable for reasons we explained above— Appellant was at the same bar with both victims, was with the victims as the revelry continued at a private residence, and then assaulted each victim by digital penetration after she fell asleep in a room by herself. Furthermore,

there was no doubt as to Appellant's identity as the alleged perpetrator. In **Bryant**, the Commonwealth was introducing evidence of the prior crime as evidence of the defendant's identity as the perpetrator in the subsequent one.[3]

Appellant also argues that consolidation was unfairly prejudicial here because the jury heard evidence that he denied providing police with an exculpatory statement in the C.R. case but not the K.H. case. Appellant claims the jury could have taken his lack of denial in the K.H. case as evidence of guilt. Appellant's argument omits pertinent information. In fact, Appellant denied criminal wrongdoing in both cases. His theory of the K.H. case, as per his opening argument and his testimony at trial, was that nothing occurred without K.H.'s consent. N.T. Trial, 3/8/18, at 13; N.T. Trial, 3/9/18, at 105-06. In C.R., he denied the C.R.'s allegations altogether. N.T. Trial, 3/8/18, at 13; N.T. Trial, 3/9/18, at 95. We discern no basis upon which to conclude that the lack of an exculpatory police statement in the K.H. case rendered consolidation unfairly prejudicial to Appellant.

Finally, we observe that the trial court gave a thorough cautionary instruction on this matter:

---

[3] Appellant also relies on **Commonwealth v. Hawkins**, 626 A.2d 550 (Pa. 1993) (evidence of prior murder inadmissible where the only similarity was the strangulation of a young girl), and **Commonwealth v. Shively**, 424 A.2d 1257 (Pa. 1981) (circumstances of two rapes were not sufficiently similar to support admissibility into evidence of the prior one). We find these cases distinguishable for the same reasons as **Bryant**. Here, the similarities between the two crimes go much further than the same general class of crime, and Appellant's identity as the alleged perpetrator was not in question.

In this trial, two cases have been consolidated to be tried together. The law permits this joint trial because evidence of one case would be admissible in the trial of the other case as relevant to the defendant's common plan[,] scheme, or design. However, each case is separate and distinct. You should consider the cases as separate individual cases and the evidence [and] the law I give to you as it relates to each case just as you would if each case alone had been tried before you.

Once again, you're deciding two separate cases—once again, you're deciding two separate cases. For this reason, you must pay close attention to the evidence so to be able to properly segment it. You will consider with respect to each case the evidence presented in support of the other case for the limited purpose of establishing the defendant's common plan, scheme, or design. You must not regard this evidence as showing the defendant is a person of bad character or has criminal tendencies from which you might be inclined to infer guilt. If you find the defendant is guilty, it must be because you are convinced beyond a reasonable doubt that the evidence proved that he committed each and every element of the crimes charged.

N.T. Trial, 3/9/18, at 129-30.

Based on all of the foregoing, we discern no abuse of discretion in the trial court's decision grant the Commonwealth's motion to consolidate.

Next, Appellant argues the trial court erred forbidding Appellant to testify about conversations he had with two Commonwealth witnesses, Dan Fisher and Lauren McCall. Appellant notes that the trial court permitted these two witnesses to testify about conversations they had with K.H. Appellant argues, therefore, that the trial court should have permitted Appellant to testify as to conversations he had with Fisher and McCall.

Appellant has failed to preserve this issue. As the trial court explained in its opinion, it excluded Appellant's testimony as hearsay at trial and

Appellant failed to proffer what the testimony would have been, nor did he argue any basis upon which it would have been admissible. Trial Court Opinion, 7/10/19, at 10. Where the trial court excludes testimony as hearsay, the appellant cannot raise theories of admissibility for the first time on appeal. *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa. Super. 2002); Pa.R.A.P. 302(a).

Appellant's Pa.R.A.P. 1925(b) statement does not reference Fisher, and his argument with respect to Fisher is waived for this additional reason. Pa.R.A.P. 1925(b)(4)(vii). With regard to McCall, Appellant failed to object to the portion of her testimony that he cites in his brief, in which McCall gave her account of her interaction with K.H. on the morning following the assault. Appellant's Brief at 23-24; N.T. Trial, 3/9/18, at 44-45. Appellant cites no law in support of his argument that the Commonwealth opened the door to Appellant giving his own account of conversations with Commonwealth witnesses, nor does he cite any law in support of his argument that the testimony he would have presented was not hearsay. Appellant's Brief at 25-27. If Appellant believed there was a valid hearsay objection to McCall's testimony, he should have lodged it in timely fashion. His failure to do so did not give him license to introduce hearsay through his own testimony.

Moreover, Appellant's argument would fail on the merits.[4] He claims his own recollection of the conversations with McCall and Fisher was admissible as a prior inconsistent statement. In addition to the absence of any proffer of the substance of these conversations, Appellant has failed to articulate any valid basis upon which his recollection of McCall's or Fisher's statement would have been admissible as a prior inconsistent statement. Rule 803.1(1) of the Pennsylvania Rules of Evidence allows admission of a prior inconsistent statement if it was given under oath, was made in a writing signed and adopted by the declarant, or if it is a contemporaneous electronic recording of the witness' statement. Pa.R.E. 803.1(1). Appellant's recollection of a witness' statement is none of these. A prior inconsistent statement may be admissible under Pennsylvania Rule of Evidence 613(a) for the limited purpose to impeach a witness's credibility. But Rule 613 applies to the examination of the witness in question, and does not authorize a party to introduce his or her own interpretation of the witness' statement during the party's testimony. Pa.R.E. 613(a), (b). Appellant has failed—at trial and on appeal—to articulate any valid basis for overcoming the Commonwealth's hearsay objection.

Finally, Appellant's arguments based on due process, and his right to confront the witnesses against him, would fail because the record reveals that he had a full opportunity to cross-examine all of the Commonwealth's

---

[4] We review a trial court's evidentiary decisions for abuse of discretion. *Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014).

witnesses. Appellant does not cite any law supporting a conclusion that the trial court's exclusion of inadmissible hearsay during Appellant's testimony implicated any of his due process rights.

In his next argument, Appellant claims the trial court erred in permitting McCall to speculate as to why K.H. failed to contact police until two months after the assault. Appellant cites Rule 602 of the Pennsylvania Rules of Evidence, which requires that witnesses testify only from their personal knowledge. Pa.R.E. 602. The relevant exchange between McCall and the prosecutor was as follows:

Q. Now, at the time, did you – without saying what was said, did you and [K.H.] discuss what you should do about the – about what happened?

A. Yeah. I wanted her to speak up and report him, but she, you know – she's a mother. She has also gone through a lot of things in her personal life that I think kept her, and unfortunately society tells me to be quiet about these kind of things and not to say anything.

[Defense Counsel]: Objection.

THE COURT: Overruled.

THE WITNESS: It was just fear. You live in fear.

N.T. Trial, 3/9/18, at 48-49.

Appellant cites **Commonwealth v. Adkins**, 364 A.2d 287 (Pa. 1976), for the proposition that witness speculation is inadmissible. There, our Supreme Court held that a witness' statement that he thought the killing was drug-related was inadmissible. The Supreme Court noted that there was no factual basis in the record to support the witness' assertion, and that the

- 12 -

statement implicated the defendant in other criminal activity. Thus, the witness' statement was inadmissible and the error was not harmless. *Id.* at 291. Appellant also cites *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) for the proposition that a verdict based on speculation violates due process.

Appellant's argument is unavailing. McCall and K.H. were friends, and the record establishes that K.H. called McCall in the morning to discuss the assault. Thus, the record supports a conclusion that McCall had personal knowledge of K.H.'s reasons for not going to the police right away. Moreover, as the Commonwealth notes, a lay witness can give opinion testimony if it is rationally based on his or her perception, helpful to understanding a fact in issue, and not based on scientific, technical, or other specialized knowledge. Pa.R.E. 701. We discern no abuse of discretion in the trial court's decision to overrule Appellant's objection, to McCall's testimony, nor do we discern any basis for concluding that the verdict in the K.H. case was based on conjecture.

Appellant also argues that the trial court erred in permitting a police officer to testify that there was no doubt that Appellant was in C.R.'s home on the date of the alleged C.R. assault. Appellant claims the officer's testimony was conjecture. We will not address this argument, inasmuch as the trial court found Appellant not guilty of all charges arising from the alleged assault of C.R.

In his fourth and final argument, Appellant claims the prosecutor committed misconduct during closing argument by offering his personal

opinion of the credibility of Commonwealth witnesses. Our Supreme Court has held that prosecutors may not offer their opinion as to the credibility of an accuser. *Commonwealth v. DeJesus*, 860 A.2d 102, 112 (Pa. 2004). "The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *Id.* (quoting ABA Standards for Criminal Justice 3-5.8(b)). Our Supreme Court has held, however, that "a prosecutor's remark regarding the credibility of a witness for the Commonwealth does not constitute reversible error if it is a reasonable response to a prior attack on the credibility of that witness by the defense." *Commonwealth v. Rios*, 684 A.2d 1025, 1034 (Pa. 1996), *cert. denied*, 520 U.S. 1231 (1997). When reviewing an allegation of prosecutorial misconduct during argument, we must consider the prosecutor's remarks in context, rather than in isolation. *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super. 2006), *appeal denied*, 907 A.2d 1102 (Pa. 2006). A prosecutor must have latitude to present the Commonwealth's case with "force and vigor," but the argument must be based on "facts in evidence and legitimate inferences therefrom." *Commonwealth v. Eichinger*, 108 A.3d 821, 836 (Pa. 2014). Our Supreme Court has set "a high bar for reversal on grounds of prosecutorial misconduct where the trial court has issued appropriate instructions." *Id.* "[C]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant

such that they could not weigh the evidence objectively and render a fair verdict." *Id.*

After the Commonwealth's closing, Appellant raised the following objection:

> I didn't object during closing. I do believe that the Commonwealth was actually, in its closing, bolstering these witnesses by burden shifting and suggesting that there was no – it was burden shifting when the argument was made that they had no reason to lie. It's a bolstering, burden shifting argument, Judge, and the Commonwealth isn't allowed to do that. So I – I didn't object during closing but I'm placing my objection on the record now.

N.T. Trial, 3/9/18, at 126.

In his Pa.R.A.P. 1925(b) statement, Appellant asserted that he was "denied due process and a fair trial when the prosecutor made arguments in summation that shifted the burden to the defense and improperly bolstered the testimony of witnesses." Appellant's Concise Statement of Errors Complained of on Appeal, 9/18/18, at ¶ 3. Thus, Appellant never identified with specificity the objectionable portion of the Commonwealth's closing.

In its opinion, the trial court addressed what it believed to be the portion of the Commonwealth's closing that drew the objection:

> It appears that defense counsel's objection relates to the following comments made by the prosecutor during her closing argument:
>
> > So in weighing the credibility of the witnesses, you can look at bias. What reason does [C.R.] have to make this up? What does [C.R.] gain from saying [Appellant] penetrated her with his fingers? What does [K.H.] gain by making up the fact that [Appellant] touched her, that it was nonconsensual? Did they gain anything from having to come to the

- 15 -

> courtroom to testify? How about [J.R.]? Was [sic] does he gain from this? What does Lauren McCall, Dan Fisher […] gain from any of this? What reasons do they have to make it up?

[N.T. Trial, 3/9/18, Closing Argument, at 27-28.]

Trial Court Opinion, 7/10/19, at 7. Given the lack of specificity of his objection at trial, and the lack of specificity in his Pa.R.A.P. 1925(b) statement, we could deem Appellant's fourth argument entirely waived. Instead, we will confine our review to the portion of the prosecutor's closing the trial court analyzed in its opinion. Were we to address other portions of the transcript Appellant identifies on page 38 of his brief, Appellant's argument would fail for the reasons explained below.

The trial court observed that Appellant attacked the credibility of each of these witnesses during its closing, and that the prosecutor's comments were a fair response. *Id.* at 8. Indeed, the record reflects that defense counsel repeatedly attacked the credibility of all of the Commonwealth's witnesses. N.T. Trial, 3/9/18, at 7-16. The trial court therefore concluded the Commonwealth did not commit misconduct in arguing its witnesses' lack of motive to fabricate their testimony.

In *Rios*, defense counsel challenged the credibility of a witness' identification of the defendant, and the prosecutor responded by saying the witness' testimony had a "mark of the truth," and that she was "not trying to make stuff up to make the case better." *Rios*, 684 A.2d at 1034. The Supreme Court deemed the prosecutor's comments "a reasonable response,

in both scope and force[.]" ***Id.*** We believe the same rationale the Supreme Court applied in ***Rios*** applies here. For each witness whose credibility defense counsel challenged, the prosecutor argued that witness' lack of motivation to fabricate. Appellant's fourth argument lacks merit.

In summary, we have concluded that each of Appellant's arguments lacks merits or is not preserved for review. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/21