626 A.2d 550

COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas W. HAWKINS, Jr., Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 25, 1993.

Decided June 7, 1993.

124

Michael G. Floyd, for T.W. Hawkins.

Bruce L. Castor, Robert A. Graci, Atty. Gen. Office, Mary MacNeil Killinger, Maria Dutkowski, for the Com.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

PAPADAKOS, Justice.

This is a direct appeal from a conviction of murder in the first degree and the imposition of a death sentence upon Appellant, Thomas W. Hawkins, Jr., pursuant to 42 Pa.C.S.A. § 9711.[1] Appellant was also convicted of indecent assault. He was tried by a jury in the Court of Common Pleas of Montgomery County before the Honorable S. Gerald Corso. The facts in this case, viewed in a light most favorable to the Commonwealth, the verdict winner, may be summarized as follows.

At approximately 5:00 p.m., on June 4, 1989, the body of fourteen-year-old Andrea Nicole Thomas, who had been strangled to death, was found on her bed on the second floor of her home at 455 Old Reading Pike, Stowe, Pennsylvania. The victim's aunt, Cherisse Hawkins, returned to the home in the late afternoon to discover the body. She also found the front door unlocked and partially ajar and the living room in disarray. The victim's dress and bloody underpants were found on the downstair's living room floor along with various blood and fecal stains. Additionally, there was a plastic garbage bag, like a burglar might use to carry away booty, found in the living room on which Appellant's fingerprints and no others were found. The victim's body was found in her bed upstairs, nude except for a bra pulled up above her breasts. Her body was covered with a blanket, and a pillow covered her face. There were puncture wounds in her back and a two-pronged fork with bent tines was also found.

1. 42 Pa.C.S.A. § 9711(h)(1) provides:
    (h) Review of death sentence.—
    (1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

Examination of the body by a forensic pathologist revealed vaginal bruises, scrapes and tears consistent with sexual penetration. The victim was strangled to death by ligature (a telephone and extension wire), and her back bore the stab wounds.

Appellant, the uncle of the deceased, was one of the relatives summoned to the scene of the crime by the family. He arrived at what was also his parent's house that evening (June 4) and gave a statement admitting that he had gone to the house that same morning around 9:00 a.m., had climbed through the window, had seen his niece, Andrea, had played and wrestled with her and had left at 9:45 a.m. after failing to find the keys to his father's car.

Linking Appellant to the crime was the fact that fiber similar to the sewing thread of Appellant's pants was later found on the dress the victim had been wearing. The time of the victim's death was also estimated to have been between 9:00 a.m. and 12:00 noon, a time during which Appellant admitted to having been at the house.

On September 21, 1989, while executing a search warrant at Appellant's home in Philadelphia on an unrelated matter, the police observed detective magazines in plain view in Appellant's bedroom. Several of the magazine articles involving murders of women were highlighted; some had pages folded, and others were just marked. These magazines were introduced at Appellant's trial. Two inmates who were incarcerated with Appellant testified at trial that Appellant had made incriminating statements to them. Finally the circumstances of the victim's death were compared at trial with those of the murder for which Appellant pled guilty in 1981, revealing some similarities.

On August 14, 1990, the jury found Appellant guilty of first degree murder. Later that same day, after the penalty phase of the trial, the jury determined that Appellant's sentence should be death. The jury determined that one mitigating circumstance—the general "demeanor" of Appellant "in every-

day life," was outweighed by one aggravating circumstance—the prior murder conviction.

In his appeal to us, Appellant asserts a number of errors at trial, including the contention that certain evidence should have been suppressed; that trial counsel was ineffective; and that there was prosecutorial misconduct. We need not reach these assertions, however, because Appellant's very first contention is meritorious and requires a new trial. Appellant correctly argues that the trial court erred when it allowed the Commonwealth to introduce evidence of Appellant's prior murder conviction during the guilt phase of his trial.

As a general proposition, the prosecution may not introduce evidence of prior criminal acts of the accused unless the evidence is introduced for some specific purpose *other than* to suggest that because the defendant is a person of criminal character, it is more probable than not that he committed the crime for which he is on trial. *Commonwealth v. Styles*, 494 Pa. 524, 431 A.2d 978 (1981). An exception to this rule occurs where evidence is offered to prove the perpetration of other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. *Commonwealth v. Shively*, 492 Pa. 411, 424 A.2d 1257 (1981); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). Much more is required than the mere repeated commission of crimes of the same class such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be *like a signature. Shively, supra.* See also, McCormick, *Evidence,* § 190(3) (4th ed. 1992). For the evidence to be admissible, the Commonwealth must demonstrate uniquely similar common features creating a sufficient likelihood that the same person committed both crimes. *Commonwealth v. Clayton*, 516 Pa. 263, 532 A.2d 385 (1987); *Commonwealth v. Bryant*, 515 Pa. 473, 530 A.2d 83 (1987).

At a pre-trial hearing in the instant case, the Commonwealth contended that the evidence of Appellant's prior 1981 homicide conviction (Appellant had pled guilty to third degree

murder in 1981 for the death of Karen Stubbs) was the foundation of its case and essential for it to proceed. The Commonwealth purported to produce evidence to establish eighteen similar circumstances between the prior homicide and the instant killing. Both victims were black, both victims were young, ages fourteen and fifteen, both victims were females, both victims were of the Seventh Day Adventist religion, both victims were students at Pine Forge Academy where Appellant went to school, both victims knew Appellant, both murders occurred on hot days, both victims were found in second-floor bedrooms in buildings where Appellant's family resided but not Appellant, Appellant was the last person to see both victims alive, both victims were found in the nude or almost so, both victims had been strangled to death, both victims had been stabbed with an unusual weapon, both victims were struck although not with life-threatening force on the back of the head prior to death, both victims displayed vaginal trauma, both crime scenes were altered to display evidence of a burglary or robbery or something of that nature. In both incidents, Appellant washed clothing after last being with the victim. In both cases, Appellant admitted to horseplay when last with the victims. In both cases, Appellant claimed the victims were flirting with him prior to their deaths. Around the time of each of the murders, Appellant admitted to being an avid reader of detective magazines.

The trial judge thought that these eighteen similarities fell into the following four basic categories:

1) similarity of victims;

2) similarity of circumstances surrounding the deaths;

3) similarity of techniques to commit and conceal the murders; and

4) similarity of injuries inflicted.

Balancing the evidentiary need of the Commonwealth and what it thought to be the similarity of the two crimes against the prejudice to Appellant (who had filed notice of an alibi defense), the court exercised its discretion to permit the

evidence of the prior homicide to be admitted against Appellant. In this ruling, the trial judge was wrong.

The similarities between the two crimes here do not show a common thread or distinct signature. They are merely coincidental and not logically connected. What was not shown here was a common *modus operandi,* to use a phrase of which authors of detective stories are fond. See, *People v. Barbour,* 436 N.E.2d 667, 106 Ill.App.3d 993, 62 Ill.Dec. 641 (1982). In *People v. Golochowicz,* 319 N.W.2d 518, 526, 413 Mich. 298 (1982), the Michigan court held that "there was not the requisite 'distinguishing, peculiar or special characteristics' " where "two unmarried male victims were both strangled, one bloodlessly and one after a beating, and their personal property of various kinds [was] stolen from their residences and later sold to friends of the defendant." In *Sutphin v. Commonwealth,* 337 S.E.2d 897, 900, 1 Va.App. 241 (1985), the Virginia court held that it was reversible error to connect a defendant to a robbery, involving a cinder block thrown through a glass door, by evidence of a previous conviction for breaking and entering by throwing a brick through a glass door since "Breaking a glass door with a piece of cinder block or similar object is not a sufficiently distinctive method of attempting unlawful entry to prove identity." Here, there were two strangulations of two young girls. The rest was coincidence, and certainly together this is not enough to establish a signature crime or a distinct *modus operandi.*

Indeed, there were many *dissimilarities* between the 1981 crime and the instant murder. While both murders were by strangulation, it is a fact that strangulations are numerous and as a method of killing strangulation is not unusual and certainly not unique. The instant murder was not unique and differed from the 1981 murder because the victim here died of strangulation by ligature. The dissimilarities in the murders lead to the conclusion that the 1981 murder was accidental (as Appellant testified) and the instant murder was intentional. The fact that the 1981 Stubbs murder was accidental is further buttressed by the fact that Appellant tried to use a paint scraper to perform a tracheotomy on the victim, and he

pled guilty to homicide of the third degree. On the other hand, the puncture wounds on Thomas here had nothing to do with an attempt to restore life. Moreover, the ligature marks on Thomas' neck indicate intentional murder. Thus, the Commonwealth offered third degree murder in one case and sought to prove first degree murder in the other. Clearly, the Commonwealth recognized that the murders were different just as a paint scraper and a fork are unusual and unique, and they were employed in such different ways so as not to indicate that the same person necessarily committed the murders.

Finally, there is no evidence in this case of serial killings or a sophisticated psychological profile that applies to Appellant. In short, the Commonwealth did not meet the requirements for showing the possible existence of signature crimes here and it was therefore highly prejudicial error to introduce evidence of the 1981 homicide at Appellant's trial. Appellant is entitled to a new trial.

Accordingly, the judgment of sentence is reversed and the matter is remanded for a new trial.

LARSEN, J., concurs in the result.

MONTEMURO, J., files a dissenting opinion in which NIX, C.J., and CAPPY, J., join.

MONTEMURO, Justice, dissenting.

Since I am unable to agree that the striking similarities between the murders of Karen Stubbs and Andrea Thomas are no more than coincidental, I dissent.

I readily recognize that the admission of evidence of the accused's prior criminal activity is "so highly prejudicial in its effect upon the jury as to be equalled only by an actual confession in its impact." *Commonwealth v. Bryant*, 515 Pa. 473, 476, 530 A.2d 83, 85 (1987) citing *Commonwealth v. Spruill*, 480 Pa. 601, 606, 391 A.2d 1048, 1050 (1978). Only under special circumstances is evidence of prior crimes admissible. *Commonwealth v. Bryant*, 515 Pa. at 477, 530 A.2d at

85 citing McCormick, *Evidence,* § 190 (1972 2d ed.); *see also Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981) (discussing special circumstances exception in the context of joinder of criminal actions).

Admission of evidence of a prior crime is permissible when used for the purpose of identifying the perpetrator. This narrow exception only applies when both the prior crime and the present offense share such distinct similarities that, "one would naturally conclude that both crimes were perpetrated by the same individual." *Commonwealth v. Bryant,* 515 Pa. at 477, 530 A.2d at 85. "There must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others." *Id.* at 478, 530 A.2d at 86 quoting *Commonwealth v. Shively,* 492 Pa. 411, 414, 424 A.2d 1257, 1259 (1981). More is needed than commission of two crimes of the same class, rather the method of commission must be so unusual so as to constitute a signature. *Compare Commonwealth v. Clayton,* 516 Pa. 263, 532 A.2d 385 (1987) (finding factual similarities sufficient for admission of evidence of prior crimes demonstrating identity and common scheme) with *Commonwealth v. Bryant* and *Commonwealth v. Shively* (both cases finding insufficient factual similarities to justify application of exception).

The trial court in the case sub judice determined that the factual similarities between the two murders were so striking that the evidence of the prior crime was relevant to identifying appellant as the perpetrator of the instant offense.[1] The admission or suppression of evidence is a decision vested in the trial court, and that decision will not be disturbed absent an abuse of discretion. *Commonwealth v. Banks,* 513 Pa. 318, 521 A.2d 1 (1987).

1. Before receiving the evidence of a prior crime, the trial court instructed the jury that the evidence was only admissible for a very limited purpose. (N.T. 8/6/90 at 91–92). When giving its charge, the trial court again instructed the jury on the precise purpose it was to consider the evidence of the prior murder. (N.T. 8/14/90 at 116–118). I hasten to add that even with cautionary instructions, the admission of a prior crime still could be reversible error if a significant correlation between the prior crime and instant offense was lacking.

My review of the record in the instant case reveals there was ample evidence to support the trial court's admission of appellant's prior offense as a signature crime. An examination of appellant's selection, interaction, stabbing, and vaginal traumatization of the victim; the method of murder; and appellant's calculated concealment of the crime reveals that appellant has replicated his handiwork.

On August 2, 1980, appellant murdered Karen Stubbs. The victim was a 15 year old, black female, student and resident at Pine Forge Academy in Berks County. Appellant, although not a student, also lived in the dorm, and knew the victim. Appellant claimed that he accidentally strangled the victim after she flirted with him, and then prevented his efforts to leave the dorm room. The victim was found nude, stabbed, hit in the back of the head, and vaginally traumatized. Appellant claimed that he stabbed the victim with a paint scraper in an attempt to perform a tracheotomy.

The only forensic evidence linking appellant to the crime scene was fibers of his clothing found under the victim's fingernails. This is explained by the fact that appellant went to great lengths to conceal his identity. Appellant placed the victim's clothes in a sink full of water, and wiped off her arms and all items he touched. He disposed of the paper towels he used to wipe off all of his fingerprints and threw the paint scraper in a nearby river. He stated that he got the idea to cover up the murder from a Colombo movie where a man accidentally killed a lady and then tried to make it look like a robbery. (N.T. 8/6/90 at 117).

The victim in the present case, Andrea Thomas was murdered on June 4, 1989. Thomas was a 14 year old, black female and a student at Pine Forge Academy at the time of her death. Appellant, who was Ms. Thomas' uncle, knew the victim. Appellant admitted to being in the decedent's Montgomery County home the morning of the murder. The victim was found virtually nude, stabbed, hit in the back of the head, and vaginally traumatized. The cause of death was strangulation by ligature. In addition, evidence was presented that on

the morning of the murder, the decedent was flirting and wrestling with appellant. Despite appellant's admitted wrestling with the victim the morning of the murder, the only forensic evidence linking appellant to the crime scene was his fingerprint on the inside surface of a trash bag. Appellant stated that he immediately washed his pants after leaving the victim that morning. The house was ransacked giving the appearance that a robbery had occurred.

The cumulative and distinctive similarities between the victims selected; the interaction with each victim prior to death; the method of murder; the fact that each victim was stabbed with an unusual weapon, struck in the back of the head, and vaginally traumatized; and the calculated concealment of the crime provide a correlation between the two crimes that goes far beyond the natural similarities shared by all classes of homicides.

The majority reaches to other jurisdictions to provide examples of cases where the evidence was insufficient to satisfy this limited exception. *See People v. Golochowicz*, 413 Mich. 298, 319 N.W.2d 518 (1982); *Sutphin v. Commonwealth*, 1 Va.App. 241, 337 S.E.2d 897 (1985).[2] The facts in neither of these cases have the quantity nor quality of similarities present in the instant case. Further, the precise holding in *Golochowicz* was that the admission of the prior crime evidence was error,

> not because we find an abuse of discretion in the determination that the two crimes were of the requisite similarity and bore the requisite distinctive "signature" of a single actor, but because we are persuaded that the evidence of the *uncharged* homicide was so unfairly prejudicial when weighed against its limited and tenuous probative worth that, in its admission, the defendant was denied a fair trial.

413 Mich. 298, 323, 319 N.W.2d 518, 526 (emphasis added).

The majority, in a further attempt to buttress its case, has created a dissimilarity between the Stubbs and Hawkins mur-

---

**2.** The Supreme Court of Virginia in *Spencer v. Commonwealth*, 240 Va. 78, 393 S.E.2d 609 (1990) disapproved of language contained in *Sutphin v. Commonwealth*, that would "require that evidence of the other crimes may not be admitted unless they are virtual carbon copies of the case on trial." *Spencer* at 89–90, 393 S.E.2d at 616.

134

ders.[3]  The majority states:

> The instant murder was not unique and differed from the 1981 murder because the victim here died of strangulation by ligature.  The dissimilarities in the murders lead to the conclusion that the 1981 murder was accidental (as Appellant testified) and the instant murder was intentional.  The fact that the 1981 Stubbs murder was accidental is further buttressed by the fact that Appellant tried to use a paint scraper to perform a tracheotomy on the victim, and he pled guilty to homicide of the third degree.  On the other hand, the puncture wounds on Thomas had nothing to [do] with an attempt to restore life.  Moreover, the ligature marks on Thomas' neck indicate intentional murder.  Thus, the Commonwealth offered third degree murder in one case and sought to prove first degree murder in the other.  Clearly, the Commonwealth recognized that the murders were different just as a paint scraper and a fork are unusual and unique, and they were employed in such different ways so as not to indicate that the same person necessarily committed the murders.

(Majority at 553).

The fact that, unlike Karen Stubbs, Andrea Thomas was strangled by ligature is a relevant dissimilarity.  Likewise, the fact that Karen Stubbs was stabbed in the neck, and Andrea Thomas was stabbed in the back is relevant in considering the admissibility of the prior crime.

However, the majority's conclusion that Karen Stubbs was accidentally murdered, or that the stab wounds she suffered were caused by appellant in an attempt to restore life is not sound.  The majority's accidental murder theory is premised on nothing more than appellant's unbelievable, unsupportable, and never before accepted assertions that the stab wounds were caused by an attempted tracheotomy following an accidental strangulation.  Further, there is no basis for construing

**3.**  Once having found the similarities insufficient to support the admission of this limited prior crimes exception, the court is not required to examine any dissimilarities.  *Commonwealth v. Bryant,* 515 Pa. at 479, 530 A.2d at 86.

Hawkins' prior plea to murder in the third degree as evidence that the Commonwealth somehow recognized the Stubbs murder was accidental.[4] The majority is speculating as to why the Commonwealth offered a plea bargain.

Appellant argues that the connection between the two murders is weakened by the fact that the two crimes were committed nine years apart in different counties. In considering the issue of remoteness, we have held that the length of time between crimes is, "but another factor to be considered in determining if the prior crime tends to show that the same person committed both crimes." *Commonwealth v. Shively* 492 Pa. at 416, 424 A.2d at 1259 (1981). First, the length of time decreases in significance considering that appellant spent six of the nine intervening years incarcerated. Second, when measured against all the similarities, the gap between murders does not alter the logical connection between the two crimes. In addition, the fact that the first murder occurred in Berks County while the second occurred in Montgomery County reflects the appellant's change in residence, and not a change in his modus operandi.

Finally, I would not require the Commonwealth to present "evidence ... of serial killings or a sophisticated profile that applies to Appellant." (Majority at 553). This is simply not a prerequisite to admitting evidence of prior crimes. Accordingly, I would find the trial court did not err in admitting evidence of the prior Stubbs murder.

I dissent.

NIX, C.J., and CAPPY, J., join this dissent.

---

4. Indeed, Hawkins was charged with first degree murder.