J-A22015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NATHAN WILLIAM WEAVER | : | No. 484 MDA 2020 |

Appeal from the Order Entered March 13, 2020
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000432-2019

BEFORE: SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 05, 2020**

The Commonwealth of Pennsylvania appeals from the trial court's order denying its pre-trial motion to introduce prior bad acts evidence pursuant to Pennsylvania Rule of Evidence 404(b).[1]  We affirm.

The affidavit of probable cause filed against Nathan William Weaver (Appellee) reads:

_____

[1] Rule 404(b) provides, in relevant part, as follows:

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that[,] on a particular occasion[,] the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

On [October, 26, 2018] at approximately 4:45 AM, Lock Haven Police was dispatched to the report of a sexual assault at 237 N. Fairview St. First Floor. Officer J. Gregory and Officer Fisher did arrive on scene and made contact with the caller, [M.S.], who was outside in the passenger seat of a vehicle. [M.S.] was crying and upset.

At 6:15 AM, Officer J. Gregory did interview [M.S.] at City Hall. [M.S.] reported that there was multiple people at her apartment, 237 N. Fairview St. First Floor on [October 25, 2018]. [M.S.] reported that there was drinking involved. [M.S.] reported that she had gotten tired and went to her room to go to sleep at approximately 3:15 AM. [M.S.] reported that she was in her room by herself and was laying on her bed.

[M.S.] reported that she overheard [Appellee] telling other people that he was going to take a nap on her bedroom floor before driving home. [M.S.] reported that she heard [Appellee] say this in the [l]iving room, which is adjacent to the bedroom. [M.S.] reported that [Appellee] came into the bedroom and closed the door behind him. [M.S.] reported after the door was shut, the only light in the room came through the window. [M.S.] reported that she heard [Appellee] lay down on the floor.

[M.S.] reported that she was laying in her bed closer to the wall. [M.S.] stated that the next thing she remembered was someone laying behind her in bed, who she later realized was [Appellee]. [M.S.] reported that she was very tired and [] still possibly under the influence of alcohol. [M.S.] stated that she first thought that the [individual] in bed with her was her boyfriend, "MARK." [M.S.] stated that she stated "MARK" a few times and did not get a response back. [M.S.] reported that [Appellee] was kissing her. [M.S.] reported that [Appellee] reached into her shorts and inserted his finger inside of her vagina. [M.S.] reported that [Appellee] completely removed her shorts and underwear and began to have sexual intercourse with her. [M.S.] reported that while [Appellee] was having sex with her, she realized that it was [Appellee]. [M.S.] stated that she saw [Appellee's] tribal tattoo's from the light in the window and noticed the large chain necklace that he always wears. [M.S.] stated that as soon as she realized that it was [Appellee] having sex with her, she pushed him off of her and did not say anything.

[M.S.] reported that she layed [*sic*] on the bed facing the wall. [M.S.] stated that [Appellee] put her shorts back on her and he put his pants back on. [M.S.] stated that she curled up facing the wall until she heard [Appellee] snoring. [M.S.] stated that she checked her watch and it was 4:13 AM. [M.S.] reported her watch to be two (2) minutes fast. [M.S.] reported that she then went to the bathroom and laid on the floor. While in the bathroom a friend came to the door to check on her. [M.S.] stated that her friend got her cell phone and she went outside and called 911.

[M.S.] did go to UPMC Susquehanna Williamsport after the interview and did have a sexual assault kit completed.

On [October 26, 2018] at 6:15 hours, Officer Fisher did speak with [Appellee] after he was read his Miranda warnings. [Appellee] stated that he did go into [M.S.'s] room and did try to sleep on the floor. [Appellee] reported that he could not get to sleep, so he got into [M.S.'s] bed and layed [*sic*] next to her. [Appellee] reported that he had no idea if [M.S.] was awake or sleeping. [Appellee] stated that he and [M.S.] did not talk and after tossing and turning he did fall asleep. [Appellee] reported the next thing that happened was his fianc[é] waking him up and telling him that [M.S.] had called the police because he tried to have sex with her.

On [October 26, 2018] at approximately 8:10 AM, [Appellee] did consent to providing a DNA sample. A buccal swab for DNA was obtained from [Appellee].

The buccal swab from [Appellee] and the sexual assault kit from [M.S.] were sent to the Pennsylvania State Police Laboratory for testing.

On [January 21, 2019] at 10:23 AM, your affiant did interview [Appellee] after he was provided his [Miranda w]arnings. [Appellee] did confirm that he went into [M.S.'s] room to go to sleep. [Appellee] stated that he was on the floor and has back issues, so he got into bed with [M.S.]. [Appellee] reported that he was on top of the covers and [M.S.] was under the covers. [Appellee] reported that he was not drinking heavy and that he was not drunk. [Appellee] reported that he did not touch [M.S.] and does not believe that [M.S.] would have touched him.

Your affiant did advise [Appellee] that a sexual assault kit was done and asked [Appellee] if his DNA would be found on [M.S.].

[Appellee] replied, "it shouldn't." [Appellee] stated that all he knows, is that he didn't do it.

On [February 11, 2019] at 12:55 PM, your affiant did speak with the State Police Lab. It was reported that sperm was found in the vaginal sample that was in the sexual assault kit taken from [M.S.]. The sperm sample along with the buccal swab of [Appellee] were sent for DNA analysis.

Your affiant did receive a DNA analysis from the State Police Lab, dated May 15, 2019. The analysis did show that the sperm sample was a mixture of at least two (2) individuals and that the major component of this DNA mixture profile matches the DNA profile of the swab collected from [Appellee]. . . .

Affidavit of Probable Cause, 6/11/19, at 1-2.

Pursuant to the alleged events of October 26, 2018, the Commonwealth charged Appellee with rape of an unconscious victim, involuntary deviate sexual intercourse with an unconscious victim, sexual assault, aggravated indecent assault of an unconscious victim, and indecent assault of an unconscious victim.[2]

At Appellee's preliminary hearing, the involuntary deviate sexual intercourse with an unconscious victim charge was dismissed, but the remaining charges were bound over to the trial court. On August 26, 2019, Appellee filed a motion for writ of *habeas corpus*, arguing the evidence presented by the Commonwealth at the preliminary hearing did not establish that M.S. was unconscious during the alleged sexual assault. After conducting a hearing, the trial court issued an order and opinion on October 3, 2019

_____

[2] 18 Pa.C.S.A. §§ 3121(a)(3), 3123(a)(3), 3124.1, 3125(a)(4), and 3126(a)(4).

- 4 -

granting Appellee's writ and dismissing the charges of rape of an unconscious victim, aggravated indecent assault of an unconscious victim, and indecent assault of an unconscious victim.

On January 16, 2020, the Commonwealth filed a motion to amend the information filed against Appellee. Following a hearing, the trial court granted the Commonwealth's motion, and on March 11, 2020, the Commonwealth filed an amended information charging Appellee with sexual assault, aggravated indecent assault without the complainant's consent, and indecent assault without the complainant's consent.[3]

Also on January 16, 2020, the Commonwealth filed a motion to admit prior bad acts evidence of Appellee's 2011 convictions for aggravated assault and indecent assault, which occurred in Northumberland County. The Commonwealth asserted in this motion, in relevant part, as follows:

13. [Appellee] is currently on supervision in Northumberland County, Pennsylvania as a result of guilty pleas to multiple offenses in the matter of Commonwealth of Pennsylvania v. Nathan William Weaver, docketed at No. CP-49-CR-0000633-2010.

14. In the Northumberland County matter, [Appellee] entered guilty pleas to one count of Indecent Assault (M2) 18 Pa.C.S.[A.] §[]3126(a)(1) and one count of Aggravated Assault (F2) 18 Pa.C.S.[A.] §[]2702(a)(6).

15. Said charges stemmed from an incident that took place in Rockefeller Township, Northumberland County on May 30, 2010.

---

[3] 18 Pa.C.S.A. §§ 3124.1, 3125(a)(1), and 3126(a)(1).

16. Pursuant to the testimony of the victim in that matter, [] at the Preliminary Hearing held on June 17, 2010 in front of M.D.J. Carl Rice, [victim] had attended a party at the apartment of [Appellee] on the evening of May 29, 2010, with her boyfriend and friend.

17. After drinking at the party, [victim's] memory "faded out."

18. [Victim] then woke on the floor of a bedroom within [Appellee's] residence, with [Appellee] on top of her, penetrating [victim's] vagina with his penis. . . .

21. The Commonwealth intends to introduce the following evidence at trial, concerning the prior bad acts of [Appellee]:

> a. Testimony of [] victim [] in the Northumberland County matter docketed at No. CP-49-CR-0000633-2010.
>
> b. The written guilty plea colloquy of [Appellee] in the Northumberland County matter [].
>
> c. The transcript of the guilty plea of [Appellee] in the Northumberland County matter []; and
>
> d. Testimony of the arresting/investigating officer(s) in the Northumberland County matter[.]

22. Introduction of such evidence at trial is intended to establish a common scheme/plan, absence of mistake and/or lack of accident. . . .

24. The similarities between the prior bad act in Northumberland County and the allegations pertaining to the present matter are strikingly similar in that [Appellee], in both instances, drank alcohol with his victims at house parties attended by multiple individuals, waited for the victims to become inebriated to the point of unconsciousness, then began sexually assaulting the victims.

Commonwealth's Motion to Introduce Prior Bad Acts Evidence, 1/16/20, at *2-

4.

After conducting two hearings,[4] the trial court denied the Commonwealth's motion to admit evidence of Appellee's convictions. On

_____

[4] In its opinion, the trial court outlines:

[T]his [c]ourt conducted two (2) separate proceedings on the Commonwealth's Motion to Introduce Prior Bad Acts of [Appellee] at Trial pursuant to Pa.R.E. 404(b). The dates of those proceedings were March 9, 2020 and March 12, 2020. At these proceedings, the Commonwealth introduced the following documentary evidence:

1. Exhibit "1" - The Guilty Plea concerning [Appellee's] case in Northumberland County to Number 2010-633 which was filed November 18, 2011 in the Northumberland County Court of Common Pleas;

2. Exhibit "2" - The Sentencing Order, dated December 5, 2011 - Count 6 - Aggravated Assault in the Northumberland County case;

3. Exhibit "3" - The Sentencing Order dated December 5, 2011 - Count 4 - Indecent Assault in the Northumberland County case;

4. Exhibit "4" - The Preliminary Hearing Transcript, dated June 17, 2010 regarding the Northumberland County case;

5. Exhibit "5" - [Appellee's] Custodial Written Statement given to the Pennsylvania State Police, dated May 30, 2010 regarding the Northumberland County case; and

6. Exhibit "6" - The Transcript of the guilty plea proceeding of the Northumberland County Court of Common Pleas that occurred before then President Judge Robert B. Sacavage on November 17, 2011.

No testimony was offered by either the Commonwealth or [Appellee] and argument was received from both counsel.

March 13, 2020, the Commonwealth filed an appeal with this Court.[5] Both the

Commonwealth and the trial court have complied with Pennsylvania Rule of

Appellate Procedure 1925.

> The Commonwealth presents the following issue for review:
>
> Did the trial court abuse its discretion in denying the Commonwealth's Motion to Introduce evidence of [Appellee's] 2011 conviction for Indecent Assault and Aggravated Assault as is permitted pursuant to Pa.R.E. 404(B)(2) to prove a common scheme or absence of mistake, in that both the earlier crime and the current matter involved sexual assaults against young women without their consent, who were in a diminished or compromised state, who were known to [Appellee], and which occurred at drinking parties with [Appellee].

Commonwealth Brief at 4 (suggested answer and numbering omitted).

In its brief, the Commonwealth argues that the trial court abused its

discretion in denying its motion to admit evidence of Appellee's 2011

convictions at trial. *See* Commonwealth Brief at 9-17. We note:

> It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. . . . When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must

_____

Trial Court Opinion, 3/30/20, at 3-4.

[5] In compliance with Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth certified that the trial court's March 13, 2020 order "denying the Commonwealth's Motion to Introduce Prior Bad Acts . . . will terminate or substantially handicap the prosecution." Notice of Appeal, 3/13/20, at *1.

demonstrate that the trial court actually abused its discretionary power. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Saez*, 225 A.3d 169, 177-78 (Pa. Super. 2019) (citations omitted).

The Commonwealth avers that, pursuant to Pennsylvania Rule of Evidence 404(b)(2), Appellee's 2011 convictions should be admitted at trial because when compared to the instant case, they evidence a common plan, *i.e.*, that Appellee "attends drinking parties and engages in sexual assaults upon acquaintances who are in compromised conditions due to alcohol, sleepiness, or both." Commonwealth Brief at 17. In its brief, the Commonwealth further argues that evidence of Appellee's convictions should be admitted because they "prove lack of mistake, *i.e.*, consensual sexual activity, in the current case." *Id.* at 16. The Commonwealth therefore concludes that the "decision to bar the introduction of the prior crime[s] was an abuse of discretion." *Id.* at 17.

This Court has previously stated:

When ruling upon the admissibility of the evidence under the common-plan exception, the trial court must examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive[.] Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common

- 9 -

plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Saez*, 225 A.3d at 180 (citation omitted).

Further:

[The Pennsylvania Supreme Court] has long recognized an exception to the general inadmissibility of other crimes evidence where there is a striking similarity—or logical connection—between the proffered prior bad acts and the underlying charged crime. . . . Sufficient commonality of factors between the other incidents and the underlying crime dispels the notion that they were merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator. In further explaining the logical connection standard, [the Pennsylvania Supreme Court] has noted much more is demanded than the mere repeated commission of crimes in the same class, such as repeated burglaries or thefts. The device used must be so unusual or distinctive as to be like a signature.

*Commonwealth v. Hicks*, 156 A.3d 1114, 1125-26 (Pa. 2017) (citations omitted).

"Evidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident, where the manner and circumstances of two crimes are remarkably similar." *Commonwealth v. Tyson*, 119 A.3d 353, 359 (Pa. Super. 2015) (citations omitted). However, "[t]he Commonwealth must prove beyond a reasonable doubt that a

- 10 -

defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." ***Commonwealth v. Sitler***, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (citations omitted).

In its opinion, the trial court proffered its reasons for denying the Commonwealth's motion:

> The Commonwealth maintains that the evidence of the Northumberland County case should be admissible as it proves a common plan. When ruling upon the admissibility of evidence under the common plan exception, if the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of evidence unless the time lapse is excessive. ***See Commonwealth v. Tyson***, 119 A.3d 353 (Pa. Super. 2015). The time lapse here is not excessive, as [Appellee's] guilty plea occurred on November 17, 2011 and the allegation concerning the case before this [c]ourt occurred on October 26, 2018. For other criminal acts evidence to be admissible to prove perpetration of other crimes so nearly identical as to earmark the crimes as handiwork of the accused, much more is required than mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes; the pattern and circumstances of crimes must be so unusual and distinctive as to be like a signature. ***See Commonwealth v. Hawkins***, [] 626 A.2d 550 ([Pa.] 1993). Prior [b]ad [a]cts evidence must show a unique "signature" or *modus operandi* to be considered relevant and therefore admissible. ***See Commonwealth v. Ross***, 57 A.3d 85 (Pa. Super. 2012).
>
> This [c]ourt inquired specifically on March 9, 2020 and March 12, 2020 what the Commonwealth viewed as similarities between the crimes that would cause the Northumberland case facts to be admissible before a jury in this matter. The Commonwealth listed the following facts as the similarities that would establish a "signature" or *modus operandi* that were involved in the Northumberland County case and the case before this [c]ourt:

1. The victim in the Northumberland County case was eighteen years old, while [M.S.] in the case before this [c]ourt is twenty-one years of age;

2. The victim in the Northumberland County case and [M.S.] in the present case were both acquaintances of [Appellee];

3. The assaults took place during or after a party;

4. At these parties, the victim in the Northumberland case and [M.S.] in the case before this [c]ourt consumed alcoholic beverages;

5. Nonconsensual sexual intercourse occurred in both cases; and

6. The victim of the Northumberland County case and [M.S.] in the present case were asleep either prior to or during the sexual assault.

[Appellee] argues the following differences clearly indicate that the evidence of [Appellee's] Northumberland County conviction should not be admitted:

1. The 2010 assault occurred at [Appellee's] residence and the 2018 alleged assault did not occur at [Appellee's] residence, but at a third party's residence;

2. At the 2010 assault, the victim's boyfriend was present at the party while in the 2018 allegations, [M.S.'s] boyfriend was not present at the party; [M.S.] called said boyfriend after [Appellee] had left the third party's residence;

3. In the 2010 assault, the victim was extremely intoxicated, and vomited upon herself, while in the 2018 alleged assault, [M.S.] was not extremely intoxicated and did not vomit upon herself;

4. In the 2010 assault, [Appellee] provided alcohol to the victim, while in the 2018 assault allegations, [Appellee] did not provide alcohol to [M.S.];

5. In the 2010 assault, the victim was eighteen (18) years old and therefore unable to legally consume alcoholic beverages, while in the 2018 alleged assault [M.S.] was of legal age to consume alcoholic beverages;

6. In 2010, there was no digital penetration, while in the 2018 case there was digital penetration alleged; and

7. In 2010, the victim was unable to consent. Concerning the 2018 case, there is no allegation that [M.S.] was unable to consent. It is alleged that [M.S.] was simply mistaken initially as with whom [M.S.] was having sexual intercourse.

After reviewing the similarities and dissimilarities of these cases, this [c]ourt concluded that the similarities between the two incidents did not indicate a common thread or distinct signature. Comparing the 2010 Northumberland County case facts and the current case allegations led this [c]ourt to the conclusion that there is truly no logical connection between these two cases and certainly a "signature" or *modus operandi* is not present. The similarities between these two cases certainly do not earmark these incidents due to a unique signature as actions of one particular perpetrator.

Trial Court Opinion, 3/30/20, at 4-7 (Latin phrases italicized, citations edited, and numerical parentheticals omitted).

We discern no abuse of discretion. At the preliminary hearing held prior to Appellee's 2011 guilty pleas in Northumberland County, the victim testified that she was 18 years old. N.T., 6/17/10, at 4. During the early morning hours of May 30, 2010, victim was at Appellee's residence, arriving there at approximately 11:00 p.m. the night of May 29, 2010 for a party with her

boyfriend and her friend. *Id.* at 4-5. Upon arrival, the victim testified that Appellee and his brother poured her multiple shots of alcohol, which she consumed. *Id.* at 6. After consuming the alcohol, the victim's memory "faded out," and the next thing she remembered was Appellee on top of her having sexual intercourse with her on the floor of a bedroom inside his residence. *Id.* The victim began to cry and told Appellee to stop, at which point he ran out of the room. N.T., 6/17/10, at 8. The victim then asked her friend, who was laying right beside her on the floor of the bedroom, to go get her boyfriend. *Id.* The victim and her boyfriend then left Appellee's residence and went to a hospital for treatment. *Id.* at 8-9.

In the instant case, the Commonwealth alleges the following occurred on October 26, 2018:

> [Appellee] attended a drinking party at the residence of M.S., a 21[-]year-old acquaintance of [Appellee]. M.S. went to bed around 3:15 AM, and later heard [Appellee] enter her room and lay on the floor. M.S. next recalled waking up to a person lying next to her, who was inserting a finger into her vagina (between being tired and consuming alcohol, M.S. was not sure whether she was awake or dreaming.)[.] M.S. initially believed her boyfriend was the actor, and eventually [Appellee] began having sexual intercourse with her. During this encounter M.S. realized that [Appellee] was not her boyfriend after she observed his tribal tattoos. M.S. pushed [Appellee] away from her and waited for [Appellee] to fall asleep, then left the room and later called the police.

Commonwealth Brief at 5-6.

Upon review of the record, the trial court properly exercised its discretion in concluding that Appellee's 2011 convictions and his instant

- 14 -

alleged actions do not share a common scheme that is "so unusual or distinctive as to be like a signature." *Hicks*, 156 A.3d at 1126 (citations omitted). While a common course of conduct is present here, *i.e.*, sexual assaultive behavior (or alleged behavior) at parties where alcohol was consumed, as noted above, "much more is demanded than the mere repeated commission of crimes in the same class[.]" *Id.* at 1125-26.

In 2011, Appellee pled guilty to a factual scenario where he personally served the victim alcohol to the point that she became unconscious and then sexually assaulted her. In 2018, Appellee allegedly took advantage of the M.S.'s mistaken belief that she was engaged in sexual activities with her boyfriend. The Commonwealth argues that Appellee's "signature" is drinking alcohol with his victims at house parties, "wait[ing] for the victims to become inebriated to the point of unconsciousness," then sexually assaulting them. Commonwealth's Motion to Introduce Prior Bad Acts Evidence, 1/16/20, at *4, ¶ 24.

The keystone of the Commonwealth's alleged signature, unconsciousness of Appellee's victims, is unsupported by the record. While the victim of Appellee's 2011 convictions was unconscious during the assault, here, the trial court specifically found that M.S. was not unconscious during Appellee's alleged assault. *See* Trial Court Order and Opinion, 10/3/19, at 7 ("This [c]ourt notes that the [c]ounts that have been brought against [Appellee] . . . allege that [M.S.] was unconscious, which the evidence

presented at the Preliminary Hearing and at the Habeas Corpus proceeding do not substantiate.").

In sum, there is no basis to disturb the trial court's conclusion that the facts underlying Appellee's 2011 convictions are not "strikingly" or "remarkably" similar to his alleged conduct in the case at bar. ***See Hicks***, 156 A.3d at 1125; ***Tyson***, 119 A.3d at 359. We therefore affirm the trial court's order denying the Commonwealth's motion to introduce prior bad acts evidence pursuant to Pennsylvania Rule of Evidence 404(b).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2020